# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

DANIEL J.,

                                        Plaintiff,

            v.                                              3:21-CV-1121
                                                            (ATB)

KILOLO KIJAKAZI,

                                        Defendant.

---

PETER A. GORTON, ESQ., for Plaintiff
HEETANO SHAMSOONDAR, Special Asst. U.S. Attorney for Defendant[1]

ANDREW T. BAXTER, U.S. Magistrate Judge

### MEMORANDUM-DECISION and ORDER

This matter was referred to me, with the consent of the parties, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and N.D.N.Y. Local Rule 73.1. (Dkt. Nos. 4, 7).

## I.    PROCEDURAL HISTORY

On December 19, 2016, plaintiff filed concurrent applications for disability insurance ("DIB") and Supplemental Security Income ("SSI"), alleging disability beginning on May 1, 2015. (Administrative Transcript ("T") 115, 358, 365). Plaintiff's applications were denied initially on April 20, 2017. (T. 115). Plaintiff requested a hearing, which was held before Administrative Law Judge ("ALJ") Shawn Bozarth on March 19, 2019. (T. 30-48). At the hearing, the ALJ heard testimony from plaintiff, as

---

[1] Ronald W. Makawa wrote the brief on behalf of the Commissioner, but Heetano Shamsoondar was substituted as counsel on October 26, 2022.

well as from vocational expert ("VE") Beth Lehman.  (*Id.*).  On March 25, 2019, the ALJ issued an unfavorable decision.  (T. 126).  The Appeals Council granted plaintiff's request for review on August 18, 2020 and remanded the case for further administrative proceedings.  (T. 13).

In accordance with the Appeals Council orders, a second hearing was scheduled before ALJ John Ramos on November 17, 2020, but attempts to contact the plaintiff on that day were unsuccessful.  (T. 13).  On February 23, 2021, the second hearing was held telephonically, with the plaintiff's consent, due to the COVID-19 pandemic.  (T. 13).  Plaintiff testified at the hearing, accompanied by an attorney representative.  (T. 13).  VE Elaine Cogliano also testified at the hearing.  (T. 13).  ALJ Ramos issued an unfavorable decision on March 9, 2021 (T. 10-23), which became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on January 18, 2022.  (T. 1-6).

## II.   GENERALLY APPLICABLE LAW

### A.   Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).

In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity
> that he is not only unable to do his previous work but cannot, considering
> his age, education, and work experience, engage in any other kind of
> substantial gainful work which exists in the national economy, regardless
> of whether such work exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or whether he would be
> hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections

404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity.  If he is not, the [Commissioner]
> next considers whether the claimant has a "severe impairment" which
> significantly limits his physical or mental ability to do basic work
> activities.  If the claimant suffers such an impairment, the third inquiry is
> whether, based solely on medical evidence, the claimant has an impairment
> which meets or equals the criteria of an impairment listed in Appendix 1 of
> the regulations.  If the claimant has such an impairment, the
> [Commissioner ] will consider him disabled without considering
> vocational factors such as age, education, and work experience . . . .
> Assuming the claimant does not have a listed impairment, the fourth
> inquiry is whether, despite the claimant's severe impairment, he has the
> residual functional capacity to perform his past work.  Finally, if the
> claimant is unable to perform his past work, the [Commissioner] then
> determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520,

416.920.  The plaintiff has the burden of establishing disability at the first four steps.

However, if the plaintiff establishes that his impairment prevents him from performing

his past work, the burden then shifts to the Commissioner to prove the final step.  *Id.*

### B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision.  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Id.*  However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision.  *Id*.  *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record.  *See, e.g.*, *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("[W]e are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony").  However, the

ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.   <u>FACTS</u>

Plaintiff was thirty-four years old on the alleged onset date, and forty-one years old on the date of the most recent ALJ decision.  (T. 21).  He attended high school until the eleventh grade and then received his GED in 2000.  (T. 34, 61).  He attended two semesters of college, but did not obtain a degree.  (T. 61, 505-06).  He also attempted to complete an ACCES-VR program, but wasn't able to keep up the physical requirements.  (T. 62).  At the time of the February 2021 hearing, he was residing with his girlfriend and their ten-month-old twins.  (T. 53, 66).

Because "the primary issue in this case pertains to Plaintiff's mental impairments" (Pl's. Br. at 1, Dkt. No. 9), the facts concerning physical impairments are briefly summarized.  The plaintiff suffers from Hepatitis C, polysubstance dependency, and back issues.  (T. 40).  In the 2021 hearing, the plaintiff testified that he didn't feel healthy enough to work in a position that involved squatting and lifting, but he had not sought medical treatment for issues with his knees.  (T. 76).

Plaintiff suffers from bipolar disorder, anxiety, and depression and has been in and out of various treatment programs.  (T. 19, 504-05).  Plaintiff has a well-documented history of moderate to severe depression which has caused "low mood, low motivation, feelings of guilt, hopelessness, irritability, and diminished self-esteem" and excessive worry.  (T. 508, 513, 515, 523, 533, 536-38, 541-42, 585, 589, 601-02, 643,

653, 656, 784).  He has a similarly well-documented record of varying levels of anxiety.
(T. 513, 515, 526, 533, 536, 538, 541-43, 585-86, 589, 601, 604-05, 643, 650, 652-53,
656, 784, 788).  Plaintiff testified that he experiences panic attacks which have caused
him to faint in the past.  (T. 45).  He sees a counselor for mental health treatments two
to three times per month, when he has insurance to cover the costs of the sessions.  (T.
39).  Plaintiff testified that his mental health is worse now than it was at the time of his
previous 2019 hearing.  (T. 75)

The plaintiff's brief (at 3-7) and the ALJ's decision (T. 17-21) provide detailed
statements of the relevant medical and other evidence of record.  Rather than reciting
this evidence at the outset, the court will discuss the pertinent details below, as
necessary to address the issues raised by plaintiff.

## IV. <u>THE ALJ'S DECISION</u>

The ALJ first determined that plaintiff met the insured status requirements for
DIB through March 31, 2018.  (T. 16).  The ALJ then found, at step two of the
sequential evaluation, that plaintiff had not engaged in substantial gainful activity since
his alleged onset date of May 1, 2015.  (T. 16).  Next, the ALJ found that plaintiff had
the following severe impairments: major depressive disorder, unspecified bipolar
disorder, situational anxiety disorder, and cannabis use disorder.  (T. 16).  He
determined that the plaintiff's "medically determinable impairments significantly limit
the ability to perform basic work activities as required by SSR 85-28."  (T. 16).  At the
third step, the ALJ determined that plaintiff's impairments did not meet or medically
equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404,

Subpart P.  (T. 16).

The ALJ found, at step four of the analysis, that plaintiff had the RFC to perform light work with certain additional limitations.  (T. 18-21).  Specifically, the ALJ found the plaintiff is

> able to understand and follow simple instructions and directions; perform simple tasks with supervision and independently; maintain attention/concentration for simple tasks and regularly attend to a routine and maintain a schedule. The claimant can relate to and interact with coworkers and supervisors to the extent necessary to carry out simple tasks, but they should avoid work requiring more complex interactions, negotiations, or joint efforts with coworkers to achieve work goals; and he can have occasional brief interaction with the public. He can make decisions directly related to the performance of simple work and handle usual work place changes and interactions associated with simple work. He should work in a position where he is not responsible for the work of or required to supervise others. The claimant should work in a position with little change in daily work processes or routines.

(T. 18-19).

In making the RFC determination, the ALJ stated that he considered all of the plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529" and Social Security Ruling ("SSR") 16-3p.  (T. 19).  The ALJ further noted that he considered "opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and 416.927."  (*Id.*).

The ALJ found that plaintiff's alleged symptoms could reasonably be expected to stem from the plaintiff's medically determinable impairments, but the plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms

are not entirely consistent with the medical evidence and other evidence in the record."

(T. 19).  The ALJ then determined that the plaintiff was unable to perform his past

relevant work as an electrician helper or equipment cleaner.  (T. 21).  However, the ALJ

did determine that there were other jobs that exist in significant numbers in the national

economy that the plaintiff could perform.  (T. 21).  Accordingly, the ALJ determined

that plaintiff was not disabled at any time from the alleged onset date of May 1, 2015

through the date of his decision.  (T. 22).

## V.    ISSUES IN CONTENTION

Plaintiff raises the following arguments in support of his position that the ALJ's

decision is not supported by substantial evidence:

1.    The ALJ failed to properly assess the medical opinions, resulting in a RFC that does not account for the full extent of plaintiff's mental limitations. (Pl.'s Br. at 8-22) (Dkt. No. 9).

2.    The ALJ erred at step five.  (Pl.'s Br. at 22).

The Commissioner contends that the ALJ's analysis of the medical opinion evidence

and his ultimate determination that plaintiff was not disabled are supported by

substantial evidence.  (Defendant's Brief ("Def.'s Br.") at 4-21) (Dkt. No. 14).  For the

following reasons, this court agrees with the defendant.

## VI.    RFC/WEIGHING EVIDENCE

### A.    Legal Standards

#### 1.    RFC

RFC is "what [the] individual can still do despite his or her limitations.

Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill*, No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering a RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb. 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a narrative discussion,

describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

## 2.    Weight of the Evidence/Treating Physician

In making a determination, the ALJ weighs all the evidence of record and carefully considers medical source opinions about any issue. SSR 96-5p, 1996 WL 374183, at *2-3 (1996). Under 20 C.F.R. §§ 404.1527(e) and 416.927(e), some issues are not "medical issues," but are "administrative findings." The responsibility for determining these issues belongs to the Commissioner. *See* SSR 96-5p, 1996 WL 374183, at *2. These issues include whether the plaintiff's impairments meet or equal a listed impairment; the plaintiff's RFC; how the vocational factors apply; and whether the plaintiff is "disabled" under the Act. *Id.*

In evaluating medical opinions on issues that are reserved to the Commissioner, the ALJ must apply the factors listed in 20 C.F.R. §§ 404.1527(d) and 416.927(d). The ALJ must clearly state the legal rules that he applies and the weight that he accords the evidence considered. *Drysdale v. Colvin*, No. 14-CV-722, 2015 WL 3776382, at *2 (S.D.N.Y. June 16, 2015) (citing *Rivera v. Astrue*, No. 10 Civ. 4324, 2012 WL 3614323, at *8 (E.D.N.Y. Aug. 21, 2012) (citation omitted)).

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are

not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  If an ALJ decides not to give the treating source's records controlling weight, then he must explicitly consider the four *Burgess* factors: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (quoting *Burgess v. Astrue*, 537 F. 3d 117, 120 (2d Cir. 2008)).  "[T]he ALJ must 'give good reasons in [its] notice of determination or decision for the weight [it gives the] treating source's [medical] opinion.'"  *Id.* at 96 (citing *Halloran v. Barnhart*, 362 F.3d at 32).  Should an ALJ assign less than controlling weight to a treating physician's opinion and fail to consider the above-mentioned factors, this is a procedural error.  *Id.*  It is impossible to conclude that the error is harmless unless a "searching review of the record . . . assures us that the substance of the treating physician rule was not traversed."  *Id.*

However, where the ALJ's reasoning and adherence to the regulation is clear, and it is obvious that the "substance of the treating physician rule was not traversed," no "slavish recitation of each and every factor" of 20 C.F.R. § 404.1527(c) is required. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citing *Halloran*, 362 F.3d at 31-32).  The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship

between the source and the claimant.  20 C.F.R. §§ 416.927(c)(1)-(6).

"The question here is whether the ALJ's assignment of weight is supported by substantial evidence, not whether this Court or another ALJ would have weighed the competing medical opinions differently or reached a different conclusion." *Sarah C. v. Comm'r of Soc. Sec.*, 5:19-CV-1431 (FJS), 2021 WL 1175072, at *17 (N.D.N.Y. Mar. 29, 2021) (citing *Michelle M. v. Comm'r of Soc. Sec.*, 3:18-CV-1065 (TWD), 2020 WL 495170, at *8 (N.D.N.Y. Jan. 30, 2020) (citations omitted); *Clark v. Comm'r of Soc. Sec.*, 7:13-CV-256 (FJS), 2016 WL 1057047, at *6 (N.D.N.Y. Mar. 14, 2016) (quotation marks omitted)

## B.   Summary of Medical Opinion Evidence & ALJ's Analysis

In this case, the ALJ considered several treating source opinions related to plaintiff's physical and mental limitations.  Plaintiff has challenged the ALJ's evaluation of these opinions, primarily with respect to plaintiff's mental limitations.  A summary of the opinion evidence is set out below.

### 1.   Dr. A. Chapman's Opinion

As part of the initial administrative review of plaintiff's claims in April 2017, state agency psychiatric consultant, Dr. Chapman, reviewed plaintiff's then-current medical records.  (T. 98-99, 106).  She opined the plaintiff was not significantly limited or had "mild" limitations in his abilities to maintain attention and concentration for extended periods and to perform activities within a schedule and maintain regular attendance.  (T. 102, 105).  Dr. Chapman also found that plaintiff had moderate limitations in the ability to accept instructions and respond appropriately to criticism

from supervisors; the ability to get along with coworkers or peers without distracting them or exhibiting behavior extremes; the ability to respond appropriately to changes in the work setting; and the ability to set realistic goals or make plans independently of others. (T. 105-06). She further opined that the plaintiff had "the ability to perform the basic mental demands of unskilled work on a sustained basis." (T. 107). Dr. Chapman provided a narrative[2] which summarized the medical records she reviewed and assessed the plaintiff's activities of daily living. (T. 106-07). In making her determination, Dr. Chapman relied on treatment notes from Dr. Mirza, medical examiner reports from UHS PCP, and consultative examiner Amanda Slowik's treatment notes. (*Id*.)

The ALJ afforded Dr. Chapman's opinion significant weight "due to her

---

[2] Plaintiff argues that Dr. Chapman did not provide a supporting narrative because the statement only "recite[d] a small portion of the evidence and then leap[ed] to her conclusory statement that Plaintiff can perform the mental demands of unskilled work." (Pl.'s Br. at 11-12). Plaintiff cited three cases to support his position, but none of these cases apply to Dr. Chapman's narrative. In *Stacey v. Comm'r of Soc. Sec. Admin.*, 799 F. App'x 7, 10 (2d Cir. 2020), the psychologists did not provide a narrative explanation at all or cite any evidence in support of their conclusions, whereas Dr. Chapman provided both. Both *Balistrieri v. Saul*, No. 19-CV-293 2020 WL 2847501, at *4 (W.D.N.Y. June 2, 2020) and *Matthew N. C. v. Comm'r of Soc. Sec.*, No. 3:19-CV-05112, 2019 WL 4439890, at *4 (W.D. Wash. Sept. 17, 2019) are referring to an ALJ's duties to explain their reasoning, not a consultative examiner's duty.

Plaintiff further contends that Dr. Chapman's opinions are internally inconsistent because Dr. Chapman found some moderate impairment in section one for which he found no significant limitations in section three. (Pl.'s Br. at 13). Again, the cases the plaintiff cites to support his position do not apply. Both *Milner v. Berryhill*, No. CV 16-1050, 2018 2017 WL 461095, at *12 (D.N.M. Jan. 18, 2018) and *Armijo v. Saul*, No. CV 19-1003, 2020 WL 7056071, at *13 (D.N.M. Dec. 2, 2020) are out of district cases that hold no precedential value in this court. Furthermore, the ALJ is not required to reconcile inconsistencies between section one of the worksheet and a section three narrative because "[s]ection 1 of the mental RFC form is not an RFC assessment, but is 'a worksheet to ensure that the psychiatrist or psychologist has considered'" the relevant mental health factors, while the section three narrative is for the "adjudicators [] to use as the assessment of the RFC." *Bilecki v. Comm'r of Soc. Sec.*, 5:15-CV-1045 (GTS), 2016 WL 6208538, at *8 (N.D.N.Y. Oct. 24, 2016) ("[T]he ALJ was not required to reconcile Section I of the worksheet completed by Dr. Harding with the narrative portion of Dr. Harding's opinion provided in Section III.").

expertise, her review of the claimant's records, supportive narrative and consistency of her opinion with the overall medical evidence." (T. 20). The ALJ also relied on Dr. Chapman's familiarity with the disability program's policies, evidentiary requirements, and evaluation criteria. (T. 20). The ALJ accommodated the moderate limitations noted by Dr. Chapman in the RFC determination. (T. 18-19).

### 2.   Dr. Gilbert Jenouri's Opinion

In April 2017, Dr. Jenouri completed a internal medicine consultative examination of the plaintiff and determined the plaintiff had a minimal to mild restriction walking and standing long periods, stair climbing, lifting, and carrying. (T. 595). Plaintiff reported he could dress, bathe, and groom daily. (T. 593). He reported cooking five times a week, providing childcare twice a week, and cleaning once a week. (T. 593). Dr. Jenouri did not make any determinations regarding the plaintiff's mental impairments. (T. 592-97). The ALJ afforded significant weight to Dr. Jenouri's opinion due to it being based on a direct examination of the plaintiff that was supported by the findings in the doctor's report. (T. 20). The ALJ also relied on Dr. Jenouri's familiarity with the agency's disability program's policies and evidentiary requirements. (T. 20).

### 3.   Dr. Amanda Slowik's Opinion

In April 2017, Dr. Slowik completed a consultative examination on the plaintiff and diagnosed the plaintiff with situational depression and anxiety disorder. (T. 585-89). Her medical source statement concluded the plaintiff had the following limitations:

> The [plaintiff's] ability to understand, remember, and apply simple directions and instructions is mildly to moderately limited. The [plaintiff's] ability to

> understand, remember, and apply complex directions and instructions,
> sustain concentration and regulate emotions is moderately to markedly
> limited. The [plaintiff's] ability to use reason and judgment to make work-
> related decisions is mildly limited. The [plaintiff's] ability to interact
> adequately with supervisors, co-workers, and the public and sustain an
> ordinary routine is at least moderately limited. The [plaintiff's] ability to
> maintain personal hygiene and be aware of normal hazards is not limited. His
> difficulties are caused by distractability, memory deficits, lack of motivation,
> and low mood.

(T. 588). Dr. Slowik concluded that the results of the examination appeared to be consistent with psychiatric, substance abuse, and cognitive problems that might significantly interfere with the plaintiff's ability to function on a daily basis. (T. 588).

The ALJ afforded the opinion from the psychiatric consultative examiner, Amanda Slowik, Psy.D., "significant weight due to the opinion being supported by the noted findings from the Doctor's examination of the claimant and being consistent with the evidence in the overall record." (T. 20). Furthermore, the ALJ noted that "Dr. Slowik is familiar with the agency's disability program's policies and evidentiary requirements." (*Id*.).

### 4.    Dr. Mary Anne Moore's Opinion

In February 2018, Dr. Moore completed a consultative examination on the plaintiff and diagnosed the plaintiff with posttraumatic stress disorder, bipolar II disorder with psychotic features, generalized anxiety disorder, and panic disorder with possible agoraphobia. (T. 601-06). Her medical source statement concluded the plaintiff had the following limitations. (T. 605).

> The [plaintiff] shows no limitation in regard to understanding,
> remembering, and applying simple directions and instructions. Moderate
> limitations in regard to understanding, remembering, and applying complex

15

directions and instructions; and sustaining concentration and performing a task at a consistent pace. Moderate limitation in regard to using reason and judgment to make work-related decisions; interacting adequately with supervisors, co-workers, and the public; and sustaining an ordinary routine and regular attendance at work. Moderate to marked limitation in regard to regulating emotions, controlling behavior, and maintaining well-being. Mild to moderate limitation in regard to maintaining personal hygiene and appropriate attire. Moderate limitation in regard to being aware of normal hazards and tak[ing] appropriate precautions.

(T. 605). Dr. Moore concluded the results of the examination appeared to be consistent with psychiatric issues that might significantly interfere with the plaintiff's ability to function on a daily basis. (T. 605).

The ALJ afforded less weight to Dr. Moore's opinion because the opinion was "not entirely consistent with the evidence in the record". (T. 21). Specifically, the ALJ found issue with Dr. Moore's finding that the plaintiff had a moderate to marked limitation in regulating emotions, controlling behavior, and maintaining well-being because there was no indication in the record that the plaintiff was "uncooperative, labile or exhibit[ing] emotional outbursts at his medical visits." (T. 21). In explaining his reasons for giving Dr. Moore's opinion less weight, the ALJ acknowledged that Dr. Moore was able to directly examine the plaintiff. (T. 21).

### 5. LCSW Megan Hagerbaumer's Opinion

On June 4, 2019, Licensed Clinical Social Worker ("LCSW") Hagerbaumer completed a Questionnaire-Mental form artfully drafted by plaintiff's counsel. (T. 762). LCSW Hagerbaumer indicated that plaintiff had moderate limitations in all of the listed categories, including: maintaining regular attendance, performing activities at a consistent pace, and responding appropriately to work stressors. (T. 763). She also

16

found that the plaintiff would be off-task 16% to 20% of time in a normal work day and would miss two days of work per month because of his mental impairments. (T. 763-64). The ALJ gave little weight to her opinion because the opinion was in a "checkbox form without adequate reference to supporting clinical and diagnostic findings, and is completed by an individual with lesser specialty than agency experts." (T. 21).

### C.   Analysis

#### 1.   Weighing the Medical Opinions

The ALJ's analysis of the medical opinion evidence is supported by substantial evidence, in that he accurately discussed the opinions and provided sufficient reasons for the weight given to each. (T. 20-21). None of the medical opinions are entitled to controlling weight because the only treating source was LCSW Hagerbaumer and LCSWs are not acceptable medical sources under the treating physician rule. *See Brown v. Berryhill*, 3:19-CV-156, 2020 WL 401771, at *3 (D. Conn. Jan. 24, 2020) (quoting *Drysdale v. Colvin*, No. 14-CV-1722, 2015 WL 3776382, at *4 (S.D.N.Y. June 16, 2015)) ("Licensed clinical social workers are not 'acceptable medical sources' due controlling weight under the treating physician rule.")

The ALJ's analysis reflects proper consideration of the regulatory factors in weighing treating and non-treating opinions from both examining and non-examining sources. (T. 20-21). For example, the ALJ acknowledged the program and professional expertise of Drs. Chapman, Jenouri, and Slowik, compared to LCSW Hagerbaumer's lesser speciality (T. 20-21). The ALJ was entitled to rely on Drs. Chapman, Jenouri, and Slowik's opinions because state agency consultants and consultative examiners are

17

qualified experts in the field of social security disability.  20 C.F.R. § 404.1527(e); *Cobb v. Comm'r of Soc. Sec.*, 5:13-CV-0591 (LEK/TWD), 2014 WL 4437566, at *6 (N.D.N.Y. Sept. 9, 2014) ("[T]he report of a consultative examiner may constitute substantial evidence to support an ALJ's decision.") (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983)); *Heaman v. Berryhill*, 765 F. App'x 498, 500 (2d Cir. 2019) (rejecting plaintiff's argument that the ALJ's RFC determination was not supported by substantial evidence because the ALJ relied on the opinions of the consultative examiner and the medical expert, which contradicted the opinions of treating sources, but were otherwise supported by the record).

The ALJ also noted that Drs. Jenouri, Moore, and Slowik were consultants who directly examined the plaintiff once, while identifying LCSW Hagerbaumer as plaintiff's treatment provider and Drs. Chapman as a non-examining consultant. (T. 20-21).  This shows the ALJ considering the frequency, length, nature, and extent of treatment by each provider.

Additionally, while there was some conflicting opinion evidence regarding plaintiff's mental health limitations, the ALJ reasonably determined that the overall weight of that evidence indicated plaintiff's limitations were no greater than moderate. (T. 20-21).  While the ALJ did not exhaustively address "the amount of medical evidence supporting the opinion" in all of his explanations, the ALJ is not required to provide a "slavish recitation of each and every factor" of 20 C.F.R. § 404.15279(c), as long as the ALJ's reasoning and adherence to the regulation is clear.  *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citing *Halloran*, 362 F.3d at 31-32).

18

Plaintiff argues that the ALJ erred by discounting the opinion of LCSW Hagerbaumer "solely based on its 'form' and [] lack of 'adequate references to supporting clinical and diagnostic findings' within the document itself". (Pl.'s Br. at 21). The Second Circuit recently reaffirmed that "*Halloran* did not then and does not now stand for the rule that the evidentiary weight of a treating physician's medical opinion can be discounted by an ALJ based on the naked fact that it was provided in a check-box form." *Colgan v. Kijakazi*, 22 F.4th 353, 360-61 (2d Cir. 2022). In *Colgan*, the Second Circuit held that, unlike the check-box form opinion discounted in *Halloran*, the treating physician's form-opinion in *Colgan* was "supported by voluminous treatment notes gathered over the course of nearly three years of clinical treatment. In light of these circumstances, the ALJ's first reason for assigning little weight to [the physician's] opinion was erroneous." *Id.* at 362.

In this case, the ALJ did mention that LCSW Hagerbaumer's medical source statement was a "check box" form drafted by plaintiff's lawyer, but he did not reject the opinions contained therein for that reason alone. (T. 21). LCSW Hagerbaumer did not provide a supporting narrative to accompany her conclusions. (T. 642-43). The ALJ took particular issue with LCSW Hagerbaumer's opinion that she would miss work two days per month because of her mental impairments, which he found inconsistent with her findings that plaintiff was only moderately limited in concentration and persistence. (T. 21, 762). The ALJ also cited to numerous treatment notes in which the social worker indicated that plaintiff's concentration and attention were "fair," which again seems inconsistent with her opinions regarding the likelihood of plaintiff being off-task

19

and absent from work.  (T. 20 (citing Exs. 13F & 18F), 662, 668, 680, 700, 709, 794, 797, 800, 803, 805, 807, 810, 813, 818).  *See Medina v. Comm'r of Soc. Sec.*, 831 F. App'x 35, 36 (2d Cir. 2020) (finding the ALJ properly considered treating source opinion where, inter alia, the opined limitations were inconsistent with the doctor's own treatment notes); *Rusin v. Berryhill*, 726 F. App'x 837, 839 (2d Cir. 2018) (finding no error where ALJ discounted treating source opinion that was inconsistent with treatment notes, other medical opinion evidence, and reported activities) (summary order).

As noted, a licensed clinical social worker is not considered to be an acceptable medical source and, therefore, LCSW Hagerbaumer's opinion is not entitled to controlling weight.  *Martino v. Comm'r of Soc. Sec.*, 339 F. Supp. 3d 118, 128 (W.D.N.Y. 2018) (holding licensed clinical social workers are not an "acceptable medical source"; accordingly, their opinions are not entitled to controlling weight.); *Conlin v. Colvin*, 111 F. Supp. 3d 376, 386 (W.D.N.Y. 2015) (citing *Piatt v. Colvin*, 80 F. Supp. 3d 480, 493 (W.D.N.Y. 2015)).  However, an ALJ "should consider information from 'other sources,' such as social workers, which 'may also help . . . to understand how [the claimant's] impairment affects [her] ability to work.'"  *Krach v. Colvin*, No. 13-CV-1089 (GTS/CFH), 2014 WL 5290368, at *14 (N.D.N.Y. Oct. 15, 2014) (quoting 20 C.F.R. § 404.1513(e)) (alterations in original).  The Commissioner is "free to decide that the opinions of 'other sources' . . . are entitled to no weight or little weight," but "those decisions should be explained."  *Piatt*, 80 F. Supp. 3d at 493 (citation omitted).

The ALJ cited to the LCSW Hagerbaumer's treatment notes throughout the decision, indicating that he fully considered her various opinions (T. 17, 19-20, 21) (citing Exs. 2F, 13F, 18F)), and the ALJ adequately explained his basis for discounting some of the social worker's opinions. A "searching review of the record" assures the court "that the substance of the treating physician rule was not traversed," *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019), and the ALJ's decision demonstrates adequate consideration of the regulatory factors in weighing and affording little weight to LCSW Hagerbaumer's opinions about the extent to which plaintiff would be off task or would miss work due to her mental impairments. *See* 20 C.F.R. § 404.1527(c)(2).

## 2. Substantial Evidence

The ALJ's decision indicates a thorough review of plaintiff's medical records with analysis that is supported by that evidence. (T. 17-21). In analyzing the severity of the plaintiff's mental impairments, the ALJ relied on the medical opinions in the record. (T. 17-18). In determining plaintiff's RFC, the ALJ cited to objective evidence including the outpatient treatment records completed by LCSW Hagerbaumer. (T. 18-21 (citing Exs. 13F, 18F), 662, 667-68, 680, 682-83, 701, 708, 715, 717, 741, 744, 750). The ALJ noted that while the plaintiff did report experiencing depressive symptoms, he also reported "doing better". (T. 20, 667, 682-83, 717, 741-42, 744, 750, 799, 804, 806). The ALJ also acknowledged that the plaintiff was learning coping skills to help control his depressive symptoms. (T. 20, 668, 715, 741). He pointed to mental status reports that indicated plaintiff has "organized thought processes, no thought of harm to self or others, appropriate perception, reality based thought content, above average

intelligence, fair concentration, insight, judgment and attention, and appropriate motor behavior." (T. 20, 662, 668, 680, 700, 708-09, 794, 797, 800, 803, 805, 807, 810, 813, 815, 818). The ALJ concluded that the RFC was "consistent with and supported by the observations of treating, reviewing, and examining sources in the medical records." (T. 20). This court's review of the record supports the ALJ's analysis.

The ALJ explained that he found plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (T. 19, 667, 682-83, 717, 741-42, 744, 750, 799, 804, 806). Specifically, the ALJ indicated objective evidence in the record, as well as plaintiff's daily activities, failed to support the level of severity alleged by plaintiff. (T. 19-20).

The ALJ relied on the plaintiff's function report, outpatient treatment records, and the consultative examination reports to determine the plaintiff's daily activities. (T. 20). Plaintiff's daily activities included preparing meals, cleaning when able, laundry, shopping, and using public transportation. (T. 20, 432-440, 593). The ALJ specifically noted that the plaintiff reported low energy and mood, but was still able to occasionally visit his daughter in Alabama, which resulted in plaintiff reporting a better mood. (T. 20.). The plaintiff also reported that he walks with his sons a few times a month, jogs, and works out. (T. 20).   Under the regulations, plaintiff's daily activities are a factor the ALJ may properly consider. 20 C.F.R. § 416.929(c)(3). *See also Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013) (finding the ALJ properly considered the plaintiff's varied daily activities in formulating the RFC); *Herrington v. Berryhill*, No. 3:18-CV-

315, 2019 WL 1091385, at *7 (D. Conn. Mar. 8, 2019) (affirming that activities of daily living, including childcare, are appropriate factors for an ALJ to consider when assessing a plaintiff's claimed symptoms and limitations).

Plaintiff argues that the "ALJ fail[ed] to include any limitations to staying on task and/or attendance despite the opinions finding Plaintiff does have such limitations." (Pl.'s Br. at 22).  While Dr. Slowik found that the plaintiff had moderate to marked limitations in sustaining concentration (T. 588), Dr. Chapman found, at most, mild limitations when rating the plaintiff's sustained concentration and persistence limitations (T. 105), and Dr. Moore only found moderate limitations in plaintiff's ability to maintain concentration and pace and to sustain an ordinary routine and regular attendance at work (T. 605).  As noted above, LCSW Hagerbaumer's medical source statement noted that plaintiff had moderate limitations in concentration and persistence (T. 763) and her treatment notes frequently reflected plaintiff's "fair" concentration and attention.  The ALJ reasonably concluded that these findings were not consistent with the social worker's opinions regarding plaintiff's likely absences from work.   (T. 21).[3]

This court does not find the ALJ erred in excluding limitations about the plaintiff's ability "stay[] on task and/or attendance" because there was conflicting evidence in the record and it is clear that the ALJ considered the record as whole when resolving the conflict.  (Pl.'s Br. at 22).  It is the province of the ALJ to resolve conflicts in the record. *Micheli v. Astrue*, 501 F. App'x 26, 29-30 (2d Cir. 2012) ("It is the sole responsibility of the ALJ to weigh all medical evidence and resolve any material

---

[3] The ALJ found that plaintiff's ability to perform certain activities of daily living also reflected an ability to concentrate and maintain pace.  (T. 17-18).

conflicts in the record . . .").  The ALJ's conclusion need not perfectly correspond with any of the opinions of medical sources cited in his decision as long as he has resolved the conflict and has considered the record as a whole.  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  The court concludes that the ALJ reasonably concluded that plaintiff had no more than moderate mental-health related functional limitations and adequately accounted for those limitations by limiting plaintiff to "simple" work requiring only simple tasks and instructions.  *See, e.g., Benjamin C. v. Comm'r of Soc. Sec.*, No. 5:21-CV-872 (ATB), 2022 WL 16571699, at *9, 10 (N.D.N.Y. Nov. 1, 2022) ("By limiting plaintiff to unskilled work requiring only simple, routine tasks and simple work-related decisions, the ALJ accounted for the functional limitations associated with plaintiff's [moderate] difficulties with concentration, pace, and social interaction.") (collecting cases, including *Michael C. v. Berryhill*, No. 17-CV-1395 (DJS), 2019 WL 1228553, at *5-6, (N.D.N.Y. Mar. 15, 2019) (holding that the ALJ properly accounted for the claimant's moderate limitations in maintaining a regular schedule by "providing RFC limitations such as 'simple, repetitive instructions' and limiting the amount of judgment and changes in the work setting")).

Plaintiff also argued that the ALJ erred when he didn't include any limitations with interacting with supervisors and only limited the plaintiff to occasional brief interaction with the public, but not coworkers.  (Pl.'s Br. at 18).  While the ALJ did find the plaintiff has moderate limitations in interacting with others, a limitation to unskilled work is "generally sufficient to accommodate those limitations."  *Wightman v. Comm'r of Soc. Sec.*, 18-CV-6295L, 2019 WL 2610712, at *2 (W.D.N.Y. June 26, 2019) (citing

*Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010)).  *See also Martinez v. Comm'r of Soc. Sec.*, 3:16-CV-0908 (WBC), 2017 U.S. Dist. LEXIS 93475 at *20-21 (N.D.N.Y. June 15, 2017) (collecting cases, and noting that the "Second Circuit has held that moderate limitations in work related functioning does not significantly limit, and thus prevent, a plaintiff from performing unskilled work.").  "As such, 'even a moderate limitation in social functioning would not preclude the demands of unskilled work, [and the] ALJ's RFC determination that [p]laintiff could frequently interact with others [i]s not inconsistent with [a physician's] opinion that [p]laintiff had . . . "moderate" limitations in this area.'"  *Wightman*, 2019 WL 2610712, at *2 (quoting *Cathron-Kelly v. Comm'r*, 2017 U.S. Dist. LEXIS 214747 at *21 (N.D.N.Y. 2017)).

Therefore, the ALJ did not err when he limited the plaintiff to unskilled work despite finding the plaintiff had a moderate limitation in interacting with others.  (T. 17-19).  The ALJ included the following additional social interaction limitations:  "The [plaintiff] can relate to and interact with coworkers and supervisors to the extent necessary to carry out simple tasks, but they should avoid work requiring more complex interactions, negotiations, or joint efforts with coworkers to achieve work goals, and he can have occasional brief interaction  with the public."  (T. 19-20).  Even if an unskilled work limitation did not fully account for moderate social limitations, the ALJ incorporated sufficient additional limitations in his RFC–restricting the plaintiff's interaction with supervisors and coworkers–to the extent necessary to enable him to carry out simple tasks.  (T. 17-19).

25

### 3.   Step Five Determination

At step five of the disability analysis, the burden shifts to the ALJ to demonstrate that there is other work in the national economy that plaintiff can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).  If the ALJ utilizes a VE at the hearing, the VE is generally questioned using a hypothetical question that incorporates plaintiff's limitations. *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981).  The ALJ may rely on a VE's testimony regarding the availability of work as long as the hypothetical facts the expert is asked to consider are based on substantial evidence and accurately reflect the plaintiff's limitations. *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009).  Where the hypothetical is based on a RFC analysis supported by substantial facts, the hypothetical is proper. *Id*. at 276-77.  Because this court has found that the ALJ's RFC determination was supported by substantial evidence, it also finds that the ALJ's determination at step five, and the ultimate determination of disability, were similarly supported by substantial evidence.

**WHEREFORE,** based on the findings above, it is

**ORDERED**, that the Commissioner's decision is **AFFIRMED**, and the plaintiff's complaint is **DISMISSED**, and it is

**ORDERED**, that the Clerk enter **JUDGMENT FOR DEFENDANT.**

Dated: November 23, 2022

Andrew T. Baxter
U.S. Magistrate Judge

26